## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PAYCARGO FINANCE LP,

      Plaintiff,

CASE NO.: 1:22-cv-22707-KMW

vs.

ASPEN AMERICAN INSURANCE
COMPANY,

      Defendant,

and

BAY MARITIMES INC.,

      Nominal Defendant.

_____/

## RESPONSE IN OPPOSITION TO DEFENDANT ASPEN AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS

Plaintiff PayCargo Finance LP ("Plaintiff") hereby responds in opposition to Defendant Aspen American Insurance Company's Motion to Dismiss (D.E. 15):

### I.  INTRODUCTION

Plaintiff provides a line of credit for use in connection with PayCargo, a payment platform specifically for freight payments being made to a network of vendors within the transportation and logistics industry. (D.E. 1 at pg. 2). Paying in this manner allows cargo to be released faster due to the expedient clearance of funds and the guaranty of payment. (D.E. 1 at pg. 2). Bay Maritimes, Inc. was an NVOCC[1] which used Plaintiff's credit to make freight payments through the PayCargo system. (D.E. 1 at pg. 2). Plaintiff obtained a judgment against Bay Maritimes in state court when

---

[1] An "NVOCC" or "Non-Vessel Operating Common Carrier" performs the services of an ocean carrier except without operating the vessels themselves by buying services from ocean carriers. (D.E. 1 at pg. 3).

Bay Maritimes failed to repay Plaintiff for the funds Plaintiff advanced to pay for those freight transactions. (D.E. 1 at pg. 3).

As an NVOCC licensed with the Federal Maritime Commission ("FMC"), Bay Maritimes was required to obtain a surety bond to pay "any claim" and "any judgment" "arising from its transportation-related activities…." 46 U.S.C. § 40902. Bay Maritimes obtained such a bond through Aspen American Insurance Company ("Aspen"). (D.E. 1 at pg. 4). This action seeks to recover on this surety bond. Aspen seeks dismissal based on its assertion that "Bay Maritimes was not acting as an NVOCC in its transactions with [Plaintiff]" but was instead "acting only as a debtor that received financing from a creditor…" (D.E. 15 at pg. 3). But this argument fails both legally and factually.

Legally, as will be explained in Part II, Aspen misstates the governing standard. There is no requirement that Bay Maritimes be "acting as an NVOCC" for a claim to be valid. Indeed, the FMC has expressly rejected that position. All that is required is that the defendant be an NVOCC (which Bay Maritimes undisputedly was)[2] and that the claim arises from the NVOCC's "transportation-related activities." By financing specific freight transactions of an NVOCC, Plaintiff's claim easily falls within the scope of Bay Maritimes' "transportation-related activities."

Factually, as will be explained in Part III, Aspen's factual assertion is improper on a motion to dismiss regardless because "acting as an NVOCC" is not mutually exclusive with "acting as a debtor." Even if it were the relevant standard, the factual issue of disproving that Bay Maritimes was "acting as" and NVOCC cannot be resolved on a motion to dismiss. *See Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1207 (S.D. Fla. 2020) ("Because the question of

---

[2] The Complaint alleges Bay Maritimes was an NVOCC. (D.E. 1 at pg. 3 ¶13). This is assumed to be true for the purposes of a motion to dismiss.

whether an agency relationship exists is a question of fact, whether a plaintiff reasonably believes that an agency relationship exists is also a question of fact 'which cannot be decided on a motion to dismiss.'").[3]

## II.     THE SHIPPING ACT DOES NOT REQUIRE BAY MARITIMES TO BE "ACTING AS" AN NVOCC WHEN IT WAS IN FACT LICENSED AS AN NVOCC

Pursuant to the Shipping Act, NVOCCs must obtain a surety bond to pay, among other things, "any claim against an ocean transportation intermediary[4] arising from its transportation-related activities" and "any judgment for damages against an ocean transportation intermediary arising from its transportation-related activities…" 46 U.S.C. § 40902. The language of the bond itself mirrors this language. (D.E. 1-3).

The Northern District of California held that "[t]he plain words of the Shipping Act indicate that the statute protects any party that obtains a judgment against an NVOCC from its 'transportation-related' activities" and further found "no proof of legislative intent to limit a Surety's liability to particular parties." *Trans Ocean Container Corp. v. Intercargo Ins. Co.*, C 95-2187 FMS, 1996 WL 390323, at *5 (N.D. Cal. July 3, 1996). In *Trans Ocean*, the plaintiff rented ocean cargo containers to Jeuro, Inc., an NVOCC, and made a claim on Jeuro's NVOCC bond when Jeuro failed to return those containers. *Id.* at *1.

In considering cross motions for ***summary judgment***, the court rejected the same argument Aspen makes now: whether "the Shipping Act require plaintiff to establish that Jeuro Inc. used the

---

[3] The Motion also includes a one sentence request for costs and reasonable attorney's fees (D.E. 15 at pg. 4), but fails to cite any basis for such an award. Such relief should be sought by a separate motion if, and only if, Aspen prevails in this action. Until Aspen elaborates on its basis for fee shifting, a proper response to the argument is impossible.

[4] An NVOCC is one of two types of "ocean transportation intermediar[ies]" recognized by the Shipping Act. *See* 46 U.S.C. § 40102(20) ("The term 'ocean transportation intermediary' means an ocean freight forwarder or a non-vessel-operating common carrier.").

ocean cargo containers while acting as an NVOCC." *Id.* at *2. In rejecting the proposition that Jeuro needed to be "acting as" an NVOCC, the court explained that "[t]he face of the bond plainly establishes that Jeuro Inc. 'operates as an NVOCC.'" *Id.* at *3. The court further explained that "the very fact that Jeuro Inc. purchased an NVOCC bond indicates that it acts as an NVOCC." *Id.*

The court held that "[t]he plain words of the Shipping Act indicate that the only limitation on a surety's liability under an NVOCC bond is that the judgment against an NVOCC arise from an NVOCC's 'transportation-related activities.'" *Id.* at *4. "According to the rules of statutory construction, the statutory command is unambiguous: a bond purchased pursuant to the Shipping Act is available to pay any judgment against an NVOCC as long as it arises from the NVOCC's transportation-related activities." *Id.* "Defendant's contention that a surety's liability is also contingent upon the NVOCC having acted as an NVOCC when it engaged in the transportation-related activities fails." *Id.* The court rejected applying certain "acting as"[5] language used by the FMC to limit narrow the scope of the surety bond against this unambiguous statutory mandate: "While FMC does claim that '[t]he bond covers the transportation-related activities of an NVOCC while acting as an NVOCC,' it simultaneously states that it perceives no 'sound basis or reason for otherwise narrowing the scope of the bond' beyond the 'transportation-related activities' language." *Id.*

Likewise, the Southern District of New York explained that "everything about the legislative history supports a broad, expansive interpretation of [the Shipping Act]…" *P & O Containers Ltd. v. Am. Motorists Ins. Co.*, 96 CIV. 8244 (JFK), 1998 WL 146229, at *3 (S.D.N.Y. Mar. 25, 1998). In that case, which is yet another ***summary judgment*** case, the court was

---

[5] As will be explained later in this Response, the FMC has since removed the "acting as" language. However, it was originally included to ***expand*** obligations to those who "acted as" NVOCCs even if they were not licensed as an NVOCC; not to ***restrict*** the scope of claims.

considering whether enforcement of the liquidated damages provision in a contract between an NVOCC and an ocean carrier arose from the NVOCC's "transportation related activities." *Id.* at *2. It ultimately determined that reading this language prohibit the recovery of liquidated damages would be at odds with the Shipping Act. *Id.* at *3.

> The court elaborated on the legislative history of the Shipping Act:
>
> [I]n response to growing dissatisfaction with the business conduct of NVOCCs, Congress enacted § 1721[6] of the Shipping Act. The offending NVOCC practices included: failure to deliver cargo, failure to honor loss and damage claims, and abandonment of cargo…. Congress also recognized that the problems posed by NVOCCs were exacerbated by the fact that many NVOCCs lack tangible assets, and, as a result, many parties injured by NVOCC actions were unable to recoup their losses…. To remedy the problems presented by NVOCCs, Congress … required NVOCCs to post a bond with the FMC of not less than $50,000.

*Id.* The court explained that "[a]lthough Congress never directly discussed the scope of the term 'transportation-related activities,' the legislative history demonstrates that the bond in question in the instant case would cover the liquidated damages owed to P & O." *Id.* at *3. "Indeed, everything about the legislative history supports a broad, expansive interpretation of § 1721." *Id.* "Clearly, Congress intended § 1721 to be a broad, prophylactic protection for all entities that dealt with NVOCCs." *Id.*

The *P & O* court further explained how the FMC ***expressly rejected*** an attempt to limit these claims to those "directly involving cargo moving on the Bill of Lading of the involved NVOCC" after "arising out of transportation-related activities." *Id.* at *4. In rejecting that limitation, the FMC affirmed that "[t]here does not appear to be any sound basis or reason for otherwise narrowing the scope of the bond." *Id.*

The Motion cites to a single case to support its argument that Bay Maritimes needed to be "acting as an NVOCC" in connection with Plaintiff's claim against Bay Maritimes for the bond to

---

[6] § 1721 has since been renumbered. *See* (D.E. 15 at pg. 6).

apply. (D.E. 15 at pg. 1, 5-6), discussing *AEL Asia Express (H.K.), Ltd. v. Am. Bankers Ins. Co.*, 5 Fed App'x 106 (4th Cir. 2001). However, the problems with this argument are twofold.

First, Aspen reads this case backwards. In *AEL Asia Express (H.K.), Ltd.*, the court affirmed the grant of summary judgment in favor of the insurance company on an NVOCC bond claim based on the holding that Worldwide Transport U.S.A., Inc. (the bond principal) "did not act as an NVOCC regarding the shipments in question." *Id.* at 107. The claimant there, AEL, was "a Hong Kong freight forwarder that on occasion serves as an NVOCC." *Id.* Again, AEL (the ***claimant*** in that case) "on occasion serves as an NVOCC."

To decide who was functioning as the NVOCC in the transaction, the court explained how "an NVOCC is a middleman and 'a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier.'" *Id.* at 110. In connection with the transactions, AEL was listed as the "shipper" on the documents and admitted that it "arranged for ocean carriage from Hong Kong to various ports in the United States." *Id.* In contrast, Worldwide's role was "(1) to collect the ocean freight from the ultimate consignee, (2) to pay the carrier, (3) to deduct its commission, and (4) to remit the remainder to AEL." *Id.*

According to the Fourth Circuit, "[t]hese facts unequivocally indicate that AEL, not Worldwide, was the 'shipper in its relationship with an ocean common carrier,' … and thus AEL was the NVOCC regarding the shipments of pottery." *Id.* Unlike *AEL*, in this case, Aspen has not proffered an alternative NVOCC for the underlying freight shipments to establish Bay Maritimes was not acting as an NVOCC as matter of law here. But even more fundamentally, Aspen reads the case backwards. In *AEL*, the principal Worldwide's only role in the transaction was the collection and payment of money for freight transactions arranged by the claimant AEL. The court

determined that Worldwide was not "acting as" an NVOCC because AEL was "unequivocally" the NVOCC in these transactions.

Aspen has failed to offer an "unequivocal" alternative NVOCC to Bay Maritimes to warrant dismissal. If anything, Plaintiff's role in these transactions sounds more similar to *Worldwide's* while Bay Maritimes' role was similar to AEL's. Where the Fourth Circuit found that those facts "unequivocally indicate[d]" that AEL was the NVOCC in those transactions, it is equally clear here that Bay Maritimes was "acting as" an NVOCC here.

Second, Aspen's interpretation of *AEL* is predicated on outdated law. Until two years ago, FMC regulations stated: "The bond, insurance or other surety covers the transportation-related activities of an ocean transportation intermediary **only when acting as an ocean transportation intermediary**." 46 CFR 515.21(a) (emphasis added) (December 9, 2015 to February 19, 2020). However, effective February 20, 2020, this same regulation was amended to remove the emphasized language: "The bond, insurance, or other surety covers the transportation-related activities of an ocean transportation intermediary." 46 CFR 515.21(a) (effective February 20, 2020). The removal of this language – language which underpinned the *AEL* court's analysis[7] -- supports the idea that the FMC does not perceive an additional requirement for bond claims against licensed NVOCCs that they must also "act as an NVOCC" in connection with the transactions. Instead, as explained above, the plain language of the Shipping Act as well as the language of the bond itself only requires that a claim or judgment arise from an NVOCC's "transportation-related activities."

### III.   ACTING AS A DEBTOR IS NOT MUTUALLY EXCLUSIVE WITH ACTING AS AN NVOCC

Unlike *AEL*, where the court found on ***summary judgment*** that there was an alternative

---

[7] *See AEL Asia Express (H.K.), Ltd.*, 5 Fed App'x at 109.

NVOCC in connection with the relevant transaction, Aspen does not offer an alternative NVOCC to Bay Maritimes to justify dismissal. Instead, Aspen seeks to prove that Bay Maritimes was not functioning as an NVOCC as a matter of law by highlighting that it served as a "debtor." But being a "debtor" is not mutually exclusive with being an NVOCC.

As explained, "everything about the legislative history supports a broad, expansive interpretation of [the Shipping Act.]" *P & O Containers Ltd.*, 1998 WL 146229, at *3. According to a New York State Bar Journal article, "[o]bviously, claims based on bills of lading that evidence shipments between a foreign port and a U.S. port are considered 'transportation related.'" Michael P. O'Connor, *Collecting on NVOCC Bonds,* 69–Oct N.Y. St. B.J. 38, 39 (1997).

The Complaint here alleges how Plaintiff "advanced substantial funds to Bay Maritimes' vendors on behalf of Bay Maritimes in connection with specific freight shipments." (D.E. 1 at pg. 2-3, ¶9). It further alleges how "[w]ith each advancement of funds, Bay Maritimes would provide bill of lading information to ensure that the funds advanced by PCF were specifically for Bay Maritimes freight shipment related activities." (D.E. 1 at pg. 2-3, ¶9). The fact that these payments were tied to specific freight payments and bills of lading confirms that these funds were in fact advanced in connection with Bay Maritimes' "transportation-related activities."

The purpose of these funds is further confirmed by the agreement between Plaintiff and Bay Maritimes which (1) obligated Bay Maritimes to provide the "Shipment Documentation for each Approved Transaction," (2) acknowledged that Bay Maritimes "performs transportation and/or logistics services" with request to goods contained in shipment documentation, and (3) required funds advanced "to be used for business purposes only" a (D.E. 1-1 at pg. 2, 3, 4-5). That agreement also acknowledges lien rights with respect to cargo processed through these transactions that is being held by carriers. (D.E. 1-1 at pg. 6).

Aspen appears to be arguing that a "creditor/debtor relationship" falls outside the scope of the bond. However, the bond requirement arises from the "**financial** responsibility" requirements of the Shipping Act. *See* 46 U.S.C. § 40902 (statute entitled "financial responsibility"). Claims involving "financial responsibility" are almost always going to arise from some form of "creditor/debtor relationship." Moreover, this was not some general purpose loan, as implied by Aspen, but was instead a line of credit specifically for making freight payments to ocean carriers.

Thus, Aspen's fear that Plaintiff's claim would convert this bond into a "general insurance policy" lacks foundation. What is clear that Congress has mandated surety bonds be available to protect those harmed by an NVOCC's transportation-related activities, and that Plaintiff's facilitating an NVOCC's ocean freight transactions is precisely the sort of claim which was intended to be covered by Congress's broad mandate.

XANDER LAW GROUP, P.A.
One N.E. 2nd Avenue, Suite 200
Miami, Florida 33132
Tel: (305) 767-2001
Fax: (855) 926-3370
wayne@xanderlaw.com
marcus@xanderlaw.com
service@xanderlaw.com

By:    /s/Wayne R. Atkins
       WAYNE R. ATKINS
       Fla. Bar No. 84000
       MARCUS TAN
       Fla. Bar No. 38616

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on October 18, 2022, a copy of this *Response to Motion to*

*Dismiss* was served via the Court's CM/ECF portal upon:

David E. Gurley
Michael A. Fant
Gurley & Associates
eservice@gurleyassociates.com

/s/Wayne R. Atkins
WAYNE R. ATKINS