## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**PAYCARGO FINANCE LP,**

        **Plaintiff,**

                                **Case No. 1:22-cv-22707**

**v.**

**ASPEN AMERICAN INSURANCE COMPANY,**

        **Defendant,**

**BAY MARITIMES INC.,**

        **Nominal Defendant.**

_____/

### DEFENDANT ASPEN AMERICAN INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

**COMES NOW**, Defendant, Aspen American Insurance Company ("Aspen"), by and through its undersigned counsel and pursuant to Local Rule 7.1(c)(1), submits the following Reply Memorandum in Support of its Motion to Dismiss ("Motion"), and states:

In its Response in Opposition to Aspen's Motion (ECF No. 18) ("Response"), Plaintiff, PayCargo Finance LP ("PayCargo Finance") alleges that the Motion should be denied because (1) Bay Maritimes Inc. ("Bay Maritimes") does not have to act as a non-vessel operating common carrier ("NVOCC") in its transactions with PayCargo Finance for Bay Maritimes' alleged bond ("Bond") to apply, and (2) determining whether Bay Maritimes was acting as an NVOCC is a factual question that cannot be decided on a motion to dismiss. Response at 2-9. As will be demonstrated below, these arguments are without merit and should be rejected.

I.    **Bay Maritimes had to be acting as an NVOCC in its transactions with PayCargo Finance for the alleged Bond to apply.**

<p style="text-align:center"><u>*AEL, not Trans Ocean, is persuasive here.*</u></p>

PayCargo Finance argues that Bay Maritimes did not have to be acting as an NVOCC in its transactions with PayCargo Finance for the alleged Bond to apply. Response at 3-7. This argument is based largely[1] on a 1996 ruling from the Northern District of California, *Trans Ocean Container Corp. v. Intercargo Insurance Co.*, No. C 95-2187 FMS, 1996 U.S. Dist. LEXIS 9550, at *9-15 (N.D. Cal. July 3, 1996), decided five years before the Fourth Circuit's holding in *AEL Asia Express (H.K.), Ltd. v. American Bankers Insurance Co.*, 5 Fed. App'x 106 (4th Cir. 2001). Response at 3-4.

*Trans Ocean* is unpersuasive, particularly when compared to *AEL*. First, the *Trans Ocean* court did not have the benefit of *AEL* and did not have the opportunity to review the *AEL* court's lengthy discussion of the legislative history of 46 U.S.C. § 1721 as well as the Federal Maritime Commission's ("FMC") interpretation of that section. *AEL*, 5 Fed. App'x at 109-110. In contrast to *Trans Ocean*'s limited treatment of the legislative history, the *AEL* court thoroughly reviewed and cited the legislative history and the FMC's comments in support of (1) its holding that claims such as PayCargo Finance's are not within the coverage of maritime bonds, (2) its application of § 1721, and (3) its discussion of the claims that are covered by maritime bonds. *Id.*

Second, *Trans Ocean* omitted key language from the FMC that *AEL* found persuasive. In *AEL*, the court cited the FMC's comment that, "To the extent that someone who operates as an

---

[1]    PayCargo Finance also cites a case from the Southern District of New York, *P&O Containers Ltd. American Motorists Insurance Co.*, No. 96 Civ. 8244 (JFK), 1998 U.S. Dist. LEXIS 3655, at *1 (S.D.N.Y. March 25, 1998), as supportive of its argument on this point. Response at 4-5. *P&O*, however, does not support PayCargo Finance's argument, as there is no discussion in that case as to whether a principal must have been acting as an NVOCC in the relevant transaction for a maritime bond to apply. *See generally, id.*

NVOCC also provides non-NVOCC services, those services would not be covered by the bond." 5 Fed. App'x at 109. The *AEL* court highlighted this language in support of its holding as to the meaning of § 1721. 5 Fed. App'x at 109. But *Trans Ocean* omitted this language altogether, and actually suggested that there was uncertainty as to whether the FMC treats maritime bonds as applying only to transactions where the principal was acting as an NVOCC. 1996 U.S. Dist. LEXIS 9550, at *13. Because it ignores this key language from the FMC, *Trans Ocean*'s conclusion as to how the FMC treats maritime bonds is contrary to the FMC's guidance and is not persuasive. Based on the FMC's language as cited by *AEL*, the FMC clearly treats maritime bonds as applying only to NVOCC transactions.

Therefore, rather than relying on *Trans Ocean* as PayCargo Finance suggests, this Court should instead look to the analysis in *AEL*, which supports Aspen's position that Bay Maritimes had to be acting as an NVOCC in its transactions with PayCargo for the alleged Bond to apply.

### *PayCargo Finance's attempt to reinterpret AEL should be rejected.*

Implicitly recognizing that *AEL* undermines its position, PayCargo Finance attempts to reinterpret *AEL* to minimize its central holding and distinguish it from the present case. Response at 5-7. According to PayCargo Finance, Aspen is reading *AEL* "backwards" and *AEL* requires Aspen to present an "alternative NVOCC" to Bay Maritimes. Response at 6-7.

This attempt to reinterpret *AEL* is meritless. The central holding of *AEL* is that for a valid claim to be brought, the bond principal must have been acting as an NVOCC in the transaction with the claimant. 5 Fed. App'x at 110-11. PayCargo Finance offers nothing to refute this holding except a suggestion that because the claimant in *AEL* was an NVOCC and not the principal, *AEL* is inapplicable to the present case. Response at 6-7. The language of *AEL* hardly permits such a

strained reading. *AEL* does not say that the claimant has to be an NVOCC, as opposed to the principal, for *AEL*'s holding to apply. 5 Fed. App'x at 107-110.

Accordingly, PayCargo Finance's assertion that *AEL* requires Aspen to present an "alternative NVOCC" to Bay Maritimes is meritless. *AEL* does not contain such a requirement. *See id*. Instead, the relevant inquiry is whether the principal on the bond, in this case Bay Maritimes, was acting as an NVOCC, and to evaluate whether the principal was acting as such, a court should look to whether the principal was providing NVOCC services to the claimant. *AEL*, 5 Fed. App'x at 107-11. In *AEL*, the court conducted this inquiry by analyzing whether the services provided by the principal fell within the statutory definition of an NVOCC. *Id.* at 110-11. Because the services being provided did not fall within the statutory definition, the principal was not acting as an NVOCC, and therefore, the bond did not apply. *Id.*

Thus, despite PayCargo Finance's efforts to reinterpret *AEL*, the standard articulated therein is clear and does not include a requirement to show an "alternative NVOCC." In this case, Bay Maritimes, as alleged by PayCargo Finance, was not acting as an NVOCC but an entity that obtained "short term financing in the form of credit" from PayCargo Finance. *See* Complaint (ECF No. 1) at ¶ 6.

### *AEL is not based on outdated law.*

As a final attempt to discredit *AEL*, PayCargo Finance suggests that *AEL* is based on "outdated law." Response at 7. The basis of this assertion is the FMC's recent decision to remove the language "only when acting as an ocean transportation intermediary" from 46 C.F.R. 515.21(a). Response at 7. PayCargo Finance suggests that this language "underpinned" the analysis in *AEL* and that its removal "supports the idea that the FMC does not perceive an

additional requirement for bond claims against licensed NVOCCs that they must also 'act as an NVOCC' in connection with the transactions." Response at 7.

PayCargo Finance's assertion fails. First, this language was not central to the holding in *AEL*, which was based on the court's interpretation of § 1721 through a review of the legislative history of that section and the FMC's stated guidance. 5 Fed. App'x at 109-110. When discussing the FMC's interpretation of § 1721, the court did not even cite 46 C.F.R. 515.21(a). 5 Fed. App'x at 109-110. Accordingly, PayCargo Finance's claim that this language "underpinned" *AEL* is not supportable.

Second, the FMC did not remove the language in question from 46 C.F.R. 515.21(a) as part of some effort to reverse the holding of *AEL*. As explained by the FMC, the purpose of removing this language was to include entities that "advertise or hold themselves out as [NVOCCs]" within the scope of the licensing and financial responsibility requirements of the Shipping Act. 85 Fed. Reg. 9676, 9678 (2020). Effectively, the purpose of removing the language was to allow the FMC to enforce the Shipping Act against unlicensed NVOCCs. *See id.* The FMC's decision to hold unlicensed NVOCCs to the same requirements as licensed NVOCCs does not in any way alter or affect the holding of *AEL*.

Accordingly, the Court, as the *AEL* court did, should hold that for PayCargo Finance's claim to be covered by the Bond alleged in this action, Bay Maritimes must have been acting as an NVOCC in its transactions with PayCargo Finance. As detailed in the Motion, Bay Maritimes was not acting in that capacity and was instead merely borrowing funds from PayCargo Finance; therefore, the Court should find that PayCargo Finance's claim is not covered by the alleged Bond and dismiss this action.

## II.   The allegations of the Complaint establish that Bay Maritimes was not acting as an NVOCC.

Surmising that acting as a borrower is not mutually exclusive with acting as an NVOCC, PayCargo Finance suggests that granting the Motion would be improper because whether Bay Maritimes was acting as an NVOCC is a factual question that cannot be determined on a motion to dismiss. Response at 7-9.

PayCargo Finance is mistaken. Section 40102 of Chapter 46 of the United States Code defines an NVOCC as "a common carrier that . . . (A) does not operate the vessels by which the ocean transportation is provided; and, (B) is a shipper in its relationship with an ocean common carrier." From the allegations of the Complaint, it is clear that the services Bay Maritimes was supposed to provide to PayCargo Finance were not those of "a shipper in its relationship with an ocean common carrier." Complaint at ¶¶ 6-9. Nowhere in the Complaint does it state that Bay Maritimes was shipping goods to or for PayCargo Finance or performing any similar activity. Rather, the Complaint alleges that Bay Maritimes was supposed to repay funds borrowed from PayCargo Finance. *Id.* at ¶¶ 6-9. Pursuant to the plain language of the Complaint and 46 U.S.C. § 40102, in its relationship with PayCargo Finance, Bay Maritimes was a borrower and nothing more, which does not fit within the statutory definition of an NVOCC.[2]

PayCargo Finance's observation that acting as a borrower is not mutually exclusive with acting as an NVOCC misses the point. The issue is not whether a borrower can also act as an NVOCC, but whether acting as a borrower, and nothing more, meets the statutory definition of an

---

[2]     It is also worth noting that although the Complaint alleges that Bay Maritimes was licensed as an NVOCC, nowhere in the Complaint does it state that Bay Maritimes was providing NVOCC services to PayCargo Finance. As observed by the Fourth Circuit in *AEL*, and the FMC, a principal can be licensed as an NVOCC and provide non-NVOCC services that are not covered by a maritime bond. 5 Fed. App'x at 109-111. Therefore, PayCargo Finance's allegation that Bay Maritimes was licensed as an NVOCC does not show that the alleged Bond applied to the specific transaction(s) at issue in this action.

NVOCC. Here, because Bay Maritimes only acted as a borrower to PayCargo Finance in their transactions, Bay Maritimes was not acting as an NVOCC in those transactions.

PayCargo Finance further implies that because its loans to Bay Maritimes were transportation-related, Bay Maritimes was providing NVOCC services to PayCargo Finance. Response at 8-9. Again, this argument misses the mark. Whether a claim or judgment arises from the principal's "transportation-related activities" is a separate question entirely from whether the principal was acting as an NVOCC in the relevant transaction. *See AEL*, 5 Fed. App'x at 108 (distinguishing analysis of whether principal acted as NVOCC from analysis of whether principal engaged in transportation-related activities).

**WHEREFORE**, for the foregoing reasons, and those set forth in its Motion to Dismiss, Aspen American Insurance Company respectfully requests that the Court enter judgment in its favor dismissing the Complaint with prejudice, order that Plaintiff, PayCargo Finance LP, take nothing in this action, award Aspen American Insurance Company its costs, and grant any such further relief as the Court deems just and proper.

Dated:  October 25, 2022.

<div style="margin-left: 40%;">

Respectfully submitted,

**GURLEY & ASSOCIATES**

/s/    *David E. Gurley*
David E. Gurley (Fla. Bar No.: 0402214)
dgurley@gurleyassociates.com
Michael A. Fant (Fla Bar No.: 0100713)
mfant@gurleyassociates.com
601 South Osprey Avenue
Sarasota, FL  34236
Telephone: (941) 365-4501
Facsimile: (941) 365-2916
eservice@gurleyassociates.com

*Counsel for Defendant, Aspen American Insurance Company*

</div>

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 25, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

**GURLEY & ASSOCIATES**

/s/   *David E. Gurley*
David E. Gurley (Fla. Bar No.: 0402214)
dgurley@gurleyassociates.com
Michael A. Fant (Fla Bar No.: 0100713)
mfant@gurleyassociates.com
601 South Osprey Avenue
Sarasota, FL  34236
Telephone: (941) 365-4501
Facsimile: (941) 365-2916
eservice@gurleyassociates.com

*Counsel for Defendant, Aspen American Insurance Company*