UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22707-Civ-Williams/Sanchez

PAYCARGO FINANCE LP,

    Plaintiff,

v.

ASPEN AMERICAN INSURANCE
COMPANY,

    Defendant,

and

BAY MARITIMES INC.,

    Nominal Defendant.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT ASPEN AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS**

This matter is before the Court on a motion to dismiss (ECF No. 15) filed by defendant Aspen American Insurance Company ("Aspen"). In its motion, Aspen seeks dismissal of the single-count complaint filed by the plaintiff, Pay Cargo Finance LP ("PCF"), in which PCF seeks damages for breach of contract. For the reasons set forth below, the undersigned recommends that Aspen's motion to dismiss be **DENIED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In this action, PCF seeks damages against Aspen for breach of contract for Aspen's nonpayment of a claim that PCF made against a maritime surety bond that Aspen had issued to Bay Maritimes, Inc. ECF No. 1.

According to the Complaint, during the relevant timeframe, Bay Maritimes was licensed

as a Non-Vessel Operating Common Carrier ("NVOCC") with the Federal Maritime Commission. ECF No. 1 at ¶ 13. Bay Maritimes accordingly obtained a maritime surety bond as an NVOCC from Aspen.[1] ECF No. 1 at ¶ 16; *see also id.* at ¶¶ 13-15. According to the Complaint, PCF is an intended third-party beneficiary of that surety bond. *Id.* at ¶ 25. PCF additionally alleges that it suffered damages and obtained a default judgment against Bay Maritimes "arising from Bay Maritimes' transportation-related activities," ECF No. 1 at ¶ 25; *see also id.* at ¶¶ 9-12, but that Aspen thereafter breached its obligations to PCF under the surety bond when it improperly denied PCF's claims against the surety bond based on those damages, *id.* at ¶¶ 17-18, 26-27.

Aspen has moved to dismiss PCF's Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that PCF has failed to state a claim because the Complaint establishes that Bay Maritimes was not acting as an NVOCC in the pertinent transactions and that PCF's claims are therefore not covered by the bond issued by Aspen. ECF No. 15.

## II. LEGAL STANDARD

To state a claim for relief under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege facts that make out a facially plausible claim and raise the right to relief beyond a speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1] The surety bond, which is at the center of PCF's Complaint and Aspen's motion to dismiss, is not included with the Complaint. Although the Complaint alleges that the surety bond "would presumably follow Form FMC-48" issued by the Federal Maritime Commission, which form is attached as Exhibit C to the Complaint, ECF No. 1-3, ECF No. 1 at ¶ 24, the actual bond is not part of the Complaint because PCF had not yet obtained a copy of the bond when it filed the Complaint, ECF No. 1 at ¶ 22.

2

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016); *St. George v. Pinellas Cnty.*, 285 F.3d 1134, 1337 (11th Cir. 2002). The court must also limit its consideration to the four corners of the complaint and any attached exhibits. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

### III. ANALYSIS

In its motion to dismiss, Aspen argues that PCF's claims fall outside the scope of the applicable NVOCC bond because Bay Maritimes was not acting as an NVOCC in its transactions with PCF. ECF No. 15 at 1, 6-7. Relying on *AEL Asia Express (H.K.) Ltd. v. Am. Bankers Ins. Co. of Fla.*, 5 F. App'x 106 (4th Cir. 2001), Aspen essentially argues that the NVOCC bond that it issued only provides coverage for transactions in which the principal on the bond (here, Bay Maritimes) furnished transportation-related services as an NVOCC to the claimant on the bond (here, PCF), and that "the only services Bay Maritimes was supposed to provide in its transactions with [PCF] were those of a debtor toward a creditor." *See* ECF No. 15 at 1, 7. Aspen accordingly contends that the Complaint establishes that PCF's claims do not fall within the scope of the bond's coverage. *Id.* at 1-2, 7.

Given the allegations in PCF's Complaint and the standards governing Rule 12(b)(6) motions to dismiss, however, Aspen's motion to dismiss must be denied.

3

### A. Statutory Provisions Governing NVOCC Bonds

Under federal law, a "non-vessel-operating common carrier" (NVOCC) is "a common carrier that -- (A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier." 46 U.S.C. § 40102(17). Federal law imposes a variety of obligations on an NVOCC, including, for purposes pertinent to this case, the requirement that an NVOCC "furnish[] a bond, proof of insurance, or other surety" that meets certain statutory and regulatory criteria. 46 U.S.C. § 40902(a). Such bonds "may be available to pay any claim against an ocean transportation intermediary[2] arising from its transportation-related activities" and "shall be available to pay any judgment for damages against an ocean transportation intermediary arising from its transportation-related activities." 46 U.S.C. § 40902(b)(2), (3).

### B. The Allegations in the Complaint

Here, Aspen contends that Bay Maritimes was only acting as a debtor in the transactions that gave rise to PCF's claims and was not acting as an NVOCC. ECF No. 15 at 3 (arguing that "the Complaint establishes that Bay Maritimes was acting only as a debtor and not as an NVOCC in the transactions giving rise to [PCF's] alleged claim"); *see also id.* at 7 (arguing that "the only services Bay Maritimes was supposed to provide in its transactions with [PCF] were those of a debtor toward a creditor").

The Complaint in this case, however, alleges that Bay Maritimes was at all relevant times a licensed NVOCC and that Bay Maritimes was involved in freight shipment activities. ECF No. 1 at ¶¶ 9-10, 13. Indeed, the Complaint mentions no other role played by Bay Maritimes in its freight shipments besides that of an NVOCC. ECF No. 1. Construing those allegations in the light

---

[2] "The term 'ocean transportation intermediary' means an ocean freight forwarder or a non-vessel-operating common carrier." 46 U.S.C. § 40102(20).

4

most favorable to the plaintiff and drawing all reasonable inferences in favor of the plaintiff, *see, e.g.*, *Hunt*, 814 F.3d at 1221; *St. George*, 285 F.3d at 1337, the Complaint establishes for Rule 12(b)(6) purposes that Bay Maritimes was acting as an NVOCC in its freight shipment activities.

Furthermore, while Aspen argues that the Complaint establishes nothing more than a simple debtor-creditor relationship between Bay Maritimes and PCF, the Complaint alleges that PCF was much more than a general creditor that loaned funds to Bay Maritimes for general purposes untethered to Bay Maritimes' specific shipping (*i.e.*, transportation-related) activities. On the contrary, the Complaint alleges that the transactions giving rise to PCF's claims are specific freight shipping activities of Bay Maritimes which PCF facilitated through the services that it provided to Bay Maritimes. Indeed, according to the Complaint, PCF provided short-term financing to Bay Maritimes "in connection with specific freight shipments," and Bay Maritimes provided PCF with bills of lading documenting that the financing that PCF provided was "specifically for Bay Maritimes freight shipment related activities." ECF No. 1 at ¶ 9; *see also id.* at ¶¶ 6-7. PCF's services, moreover, did not simply involve loaning funds to Bay Maritimes to finance its general shipping activities. According to the Complaint, PCF would pay vendors of transportation and logistics services on Bay Maritimes' behalf and "guarantee[] payment on the freight shipment[s]" to facilitate the expeditious release of the cargo that Bay Maritimes was transporting. ECF No. 1 at ¶¶ 6-9.

C. **Coverage Under the NVOCC Bond Issued by Aspen**

Aspen contends that dismissal of PCF's complaint is required because the NVOCC bond that it issued only provides coverage if Bay Maritimes furnished transportation-related services as an NVOCC to PCF in its transaction with PCF and because the PCF-Bay Maritimes transaction was supposedly limited to a creditor-debtor relationship between PCF and Bay Maritimes. *See,*

5

*e.g.*, ECF No. 15 at 6-7.  In support of its argument, Aspen relies on *AEL Asia Express (H.K.) Ltd. v. Am. Bankers Ins. Co. of Fla.*, 5 F. App'x 106 (4th Cir. 2001).  The *AEL* decision, however, does not support Aspen's argument concerning the particular transaction that must be examined to determine whether an NVOCC bond applies.

While AEL does "conclude that the [principal on the NVOCC bond] must serve as the NVOCC in the relevant transaction for the bond to apply," 5 F. App'x as 110, *AEL* does not examine that relevant transaction in the manner argued by Aspen.  On the contrary, *AEL* determined that the relevant transaction in which a bond's principal must be acting as an NVOCC is *the shipment* from which the claims against the bond arise.  *AEL*, 5 F. App'x at 110 ("[W]e must decide whether the [the bond principal] was serving as an NVOCC for the shipment of pottery.").  In *AEL*, moreover, the NVOCC in the shipment at issue was not the principal on the bond, but was instead the claimant.  The principal on the bond, on the other hand, had a role that "was limited to collection and distribution of funds," and the *AEL* Court determined it "could not have served as the NVOCC" in the shipment from which the claim on the bond arose.  *Id.*  The facts alleged by PCF in this case are markedly different from those that led the *AEL* Court to conclude that the NVOCC bond did not apply in that case because the bond's principal was not the NVOCC in the relevant shipping transaction.

Construing the facts alleged in the Complaint in the light most favorable to PCF and drawing all reasonable inferences in its favor, the Complaint's allegations establish that Bay Maritimes was engaged in shipping freight as an NVOCC and that PCF participated in and facilitated those transportation-related activities of Bay Maritimes by providing short-term financing to Bay Maritimes for specific freight shipments, paying vendors on Bay Maritimes' behalf who were providing Bay Maritimes with transportation and logistics services for those

6

shipments, and guaranteeing payment on those freight shipments to expedite release of the cargo that Bay Maritimes was transporting. *See* ECF No. 1 at ¶¶ 6-9. Under this factual scenario, Bay Maritimes, the principal on the bond, was the party acting as an NVOCC in the transportation-related freight shipment activities from which PCF's claims arose—claims arising from Bay Maritimes' non-payment for services that were provided by PCF to facilitate specific shipments of freight by Bay Maritimes as an NVOCC. The reasoning of the *AEL* opinion, which focused on whether the principal on the bond was an NVOCC in the pertinent shipment, would simply not preclude bond coverage under these alleged facts in which Bay Maritimes was an NVOCC in the relevant shipping transactions, that is, the freight shipments, from which PCF's claims arise.

The parties also dispute whether the bond requires that Bay Maritimes, as the principal on the bond, be acting as an NVOCC in the pertinent transportation-related activities or whether the bond instead just requires that Bay Maritimes be an NVOCC that was engaging in the pertinent transportation-related activities. *Compare, e.g.*, ECF No. 15 at 5-6 (relying on *AEL*, 5 F. App'x 106) *with* ECF No. 18 at 3-7 (relying on *Trans Ocean Container Corp. v. Intercargo Ins. Co.*, No. C 95-2187 FMS, 1996 WL 390323 (N.D. Cal. July 3, 1996), and *P & O Containers Ltd. v. Am. Motorists Ins. Co.*, No. 96 CIV. 8244 (JFK), 1998 WL 146229 (S.D.N.Y. Mar. 25, 1998)). While this question may potentially require resolution at later stages of these proceedings, it is irrelevant to the present disposition of Aspen's motion to dismiss. As already discussed, when the allegations of the Complaint are viewed in the light most favorable to PCF, drawing all reasonable inferences in PCF's favor, the Complaint alleges that Bay Maritimes was acting as an NVOCC in the pertinent transportation-related activities, that is, the freight shipments that give rise to PCF's claims against the bond. Accordingly, the Complaint survives dismissal under either party's argument on this disputed legal issue. Moreover, to the extent that Aspen may dispute that Bay Maritimes was

actually acting as an NVOCC in the pertinent freight shipments, that presents a question of fact which cannot be decided on a motion to dismiss pursuant to Rule 12(b)(6).

## IV.  CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that defendant Aspen American Insurance Company's Motion to Dismiss (ECF No. 15) be **DENIED**.

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections.  Only those objected-to factual findings and legal conclusions may be reviewed on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

RESPECTFULLY RECOMMENDED on this 5th day of August, 2023.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Kathleen M. Williams
      Counsel of Record