IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PAYCARGO FINANCE LP,

    Plaintiff,

v.

                                  Case No. 1:22-cv-22707

ASPEN AMERICAN INSURANCE
COMPANY,

    Defendant,

BAY MARITIMES INC.,

    Nominal Defendant.

_____/

**DEFENDANT'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS**

Defendant, ASPEN AMERICAN INSURANCE COMPANY ("Aspen"), pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Local Magistrate Rule 4(b), hereby files its Objections to the Report and Recommendation on Defendant's Motion to Dismiss [ECF No. 43] ("Recommendation"), and states:

**BACKGROUND**

1. On August 25, 2022, Plaintiff, PayCargo Finance LP ("PCF"), filed a one-count Complaint [ECF No. 1] seeking relief against Aspen in connection with a Federal Maritime Commission bond ("FMC Bond") that PCF alleges Aspen issued on behalf of Bay Maritimes, Inc. ("Bay Maritimes"). *See generally* Complaint.

2. On October 4, 2022, Aspen filed a Motion to Dismiss and Incorporated Memorandum of Law [ECF No. 15] ("Motion") on the grounds that the Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because the

alleged FMC Bond does not cover PCF's alleged claim for damages resulting from Bay Maritimes' alleged failure to repay sums due under a separate Credit Agreement between PCF and Bay Maritimes.

3. On October 18, 2022, PCF filed its Response in opposition to the Motion [ECF No. 18], and on October 25, 2022, Aspen filed its Reply in support of the Motion [ECF No. 19].

4. On August 5, 2023, Magistrate Judge Eduardo I. Sanchez issued his Recommendation that the Court deny the Motion.

## FINDINGS AND OBJECTIONS

5. The Recommendation is premised upon two primary findings: (i) the Fourth Circuit's holding in *AEL Asia Express (H.K.), Ltd. v. American Bankers Ins. Co.*, 5 Fed. App'x 106 (4th Cir. 2001) ("*AEL*") does not support Aspen's argument that the Complaint should be dismissed for failure to state a claim including because "*AEL* determined that the relevant transaction in which a bond's principal must be acting as an NVOCC is *the shipment* from which the claims against the bond arise," Recommendation at 6 (emphasis in original); and, (ii) the Complaint contains sufficient allegations that Bay Maritimes, the Bond principal, was acting as a Non-Vessel Operating Common Carrier ("NVOCC") "[in] the freight shipments that give rise to PCF's claims against the [B]ond" to survive a motion to dismiss, Recommendation at 4-7.

6. Aspen respectfully objects to both findings and asks the Court to grant the Motion and dismiss the Complaint.

## BASIS AND SUPPORT FOR OBJECTIONS

**I.  The Complaint should be Dismissed in Accordance with the Reasoning of the *AEL* Court.**

7. The Recommendation finds that *AEL* does not support Aspen's argument that the Complaint should be dismissed. Recommendation at 6-7. In reaching this determination, the

Recommendation interprets *AEL* to require that an FMC Bond principal, in this case, Bay Maritimes, be acting as an NVOCC in the "*shipment* from which the claims against the bond arose" for the FMC Bond to cover the alleged claim. Recommendation at 6. The Recommendation frames the pertinent inquiry in this action under *AEL* as whether Bay Maritimes was acting as an NVOCC in the alleged shipments that are referenced in the Complaint. Recommendation at 6-7. Because the Recommendation found that the Complaint's allegations, and inferences in favor of PCF, sufficiently state that Bay Maritimes was acting as an NVOCC in those alleged shipments, the Recommendation continues to find that *AEL* does not preclude PCF's alleged claim. Recommendation at 7.[1]

8. Aspen respectfully objects that the Recommendation's interpretation of *AEL* is incorrect for two reasons: (1) it reads *AEL* too narrowly; and, (2) it does not fully address *AEL*'s bond coverage analysis, which focused on whether the principal was providing NVOCC services *to the bond claimant*.

9. First, *AEL* held that "the [principal] must serve as the NVOCC in the **relevant transaction** for the bond to apply." 5 Fed. App'x at 110 (emphasis added). *AEL* does not narrow the definition of "relevant transaction" to include only shipments. Had it meant that the "relevant transaction" could only be a shipment, the *AEL* court could have held the requirement to be acting as an NVOCC in the "relevant shipment" as opposed to the "relevant transaction." As *AEL* used

---

[1] The Recommendation also notes that in *AEL*, the claimant, and not the principal, was acting as an NVOCC in the transaction that gave rise to the bond claim, and suggests that *AEL* is factually distinguishable from the present matter. Recommendation at 6. Aspen disputes that *AEL* is factually distinguishable from this matter in any material respect. Both *AEL* and this matter involve a determination of coverage for an FMC Bond and a dispute as to whether the principal was providing NVOCC services to the claimant in the transaction that gave rise to the alleged FMC Bond claim. *See AEL*, 5 Fed. App'x at 109-110. That the claimant was also an NVOCC in *AEL* does not change *AEL*'s holding that *the principal* must have been acting as an NVOCC in the "relevant transaction" for an FMC Bond to provide coverage. *See id.*

"transaction" instead of "shipment", Aspen respectfully objects that the Recommendation's reading of *AEL* is too narrow. While the "relevant transaction" *could* be a shipment (and *would* be a shipment if a claim was brought by a covered claimant (e.g. an NVOCC's customer shipping goods, or a common carrier transporting goods for an NVOCC)); the "relevant transaction" *must* be a transaction between a principal and a claimant. To hold otherwise would expand the coverage of FMC Bonds beyond their intended scope and "transform the bond into a general insurance policy." *Id.* at 110.

10. According to the Complaint, Bay Maritimes did not ship any goods to, from, on behalf of, or with PCF, and PCF is not alleging that it was damaged from errant shipping services such as misdelivery of cargo. *See generally* Complaint. Instead, PCF is alleging that Bay Maritimes failed to repay funds it borrowed from PCF under a Credit Agreement. *See* Complaint at ¶¶ 6-11 (alleging that, pursuant to a Credit Agreement, PCF advanced funds on behalf of Bay Maritimes, Bay Maritimes defaulted under the Credit Agreement by failing to repay PCF, and that Bay Maritimes' default under the Credit Agreement led to PCF bringing its claim against the Bond). Under these alleged facts, the "relevant transaction" was the alleged breach of an obligation to repay lent funds, not the shipment of goods.

11. Second, the crux of *AEL*'s holding, which is consistent with both Congressional intent and the Federal Maritime Commission's interpretation of the scope of an FMC Bond, is that for an FMC Bond to apply to a claim, the principal must have been providing NVOCC services *to the claimant*. *See AEL*, 5 Fed. App'x at 109 ("[T]he bond covers the transportation-related activities of an NVOCC when acting as an NVOCC . . . . **To the extent that someone who operates as an NVOCC also provides non-NVOCC services, those services would not be covered by the bond.**") (citation omitted) (emphasis added); *cf. Drayage Express, LLC v. Int'l*

*First Serv. USA*, 3-15-CV-3597-FLW-LHG, 2016 WL 6828572, at *3 (D.N.J. Nov. 18, 2016) (implicitly recognizing that one of a surety's available defenses to a claim against an FMC Bond is that the principal was not acting as an NVOCC with respect to the claimant: "Specifically, this Court is making no finding whether (i) one of the bonds is no longer available; (ii) Global Wine [bond principal] was acting as an ocean freight forwarder or a non-vessel-operating common carrier **with respect to Plaintiff**, or (iii) Global Wine was engaged in 'transportation related activities' **with respect to Plaintiff**.") (emphasis added); *see also AEL*, 5 Fed. App'x at 109 (citing H.R. Rep. No. 101-785 (1990) (recognizing that the purpose of an FMC Bond is to provide coverage for damages that arise from the provision of NVOCC services to the claimant: "The FMC has reported receiving an increasing number of complaints concerning the activities of NVOCCs . . . . **These offending NVOCC practices include:** failure to deliver cargo, failure to honor loss and damage claims, and abandonment of cargo at ports throughout the world . . . [M]any persons **injured by [these] NVOCC actions** are not able to recover their losses. The bonding requirement . . . should resolve most of these problems.) (emphasis added)).

12. In *AEL*, the claimant hired the principal to provide freight collection services *to the claimant*. 5 Fed. App'x at 106, 110-111. The Fourth Circuit analyzed the services the principal was providing *to the claimant* and concluded that those services were not "NVOCC services" and that, instead, the principal was merely acting as the claimant's "collection agency." *Id* at 110.

13. Under *AEL*, the proper focus of the "relevant transaction" analysis is the relationship between the principal and the claimant and, in particular, the nature of the services that the principal was providing to the claimant. *See id.* (analyzing whether principal was providing NVOCC services to claimant). If the principal was providing NVOCC services to the claimant, a claim arising from the provision of those services would potentially be covered by

the bond.[2] *See id.* at 109-10 (recognizing that bond would apply to provision of NVOCC services by principal to claimant). If, however, the principal was not providing NVOCC services to the claimant, there would be no bond coverage. *See id.* at 110 (concluding that bond did not apply to claim because principal was not providing NVOCC services *to the claimant*).

14. Therefore, in ruling on Aspen's Motion, the crucial question is whether the allegations of the Complaint show that Bay Maritimes provided NVOCC services to PCF. As discussed below, Bay Maritimes did not provide NVOCC services to PCF and, accordingly, PCF's alleged claim is not covered by the FMC Bond and should be dismissed.

## II.  The Allegations of the Complaint Show that Bay Maritimes Did Not Provide NVOCC Services to PCF; therefore, the Complaint Should Be Dismissed.

15. The Recommendation finds that the Complaint sufficiently alleges that Bay Maritimes was acting as an NVOCC in its "freight shipment activities" and therefore, dismissal would not be appropriate. Recommendation at 4. The Recommendation notes, "[t]he Complaint alleges that Bay Maritimes was at all relevant times a licensed NVOCC and that Bay Maritimes was involved in freight shipment activities," and so construing these allegations in the light most favorable to PCF and drawing all reasonable inferences in PCF's favor, PCF sufficiently alleged that Bay Maritimes was acting as an NVOCC. Recommendation at 4-5. The Recommendation also notes that according to the Complaint, PCF was "much more than a general creditor that loaned funds to Bay Maritimes" and discusses various services that PCF allegedly provided to Bay Maritimes in connection with its shipping activities, such as making payments directly to

---

[2]  In addition to the requirement that the principal provide NVOCC services to the claimant, a claim must also satisfy additional requirements to be covered under an FMC Bond including, but not limited to, the requirement that the claim arise from the transportation-related activities of the principal as defined by federal law. 46 U.S.C. § 40902(2), (3).

Bay Maritimes' vendors for specific freight shipments, that "facilitate[d] specific shipments of freight by Bay Maritimes as an NVOCC." Recommendation at 5-7.

16. Whether the principal was acting as an NVOCC in the "relevant transaction" does not depend on the services that the claimant was allegedly providing *to the principal*; instead, as noted in the preceding section, the proper inquiry is to determine whether the principal was providing NVOCC services *to the claimant* in the transaction *between them* that allegedly gave rise to the claimant's claim. *AEL*, 5 Fed. App'x at 109-110. Accordingly, the conclusion that the Complaint sufficiently alleges Bay Maritimes was acting as an NVOCC is in error because it focuses on PCF's alleged services to Bay Maritimes, and does not consider that Bay Maritimes never provided NVOCC services to PCF.

17. Section 40102(17) of Chapter 46 of the United States Code defines an NVOCC as "a common carrier that . . . (A) does not operate the vessels by which the ocean transportation is provided; and, (B) is a shipper in its relationship with an ocean common carrier."

18. The allegations of the Complaint show that Bay Maritimes did not provide NVOCC services to PCF. The Complaint does not allege that Bay Maritimes was providing PCF with the services of a common carrier that is a shipper in its relationship with an ocean common carrier. Nowhere in the Complaint does it allege that Bay Maritimes was shipping goods to, from, on behalf of, or with PCF. *See generally* Complaint. Rather, according to the Complaint, the only service Bay Maritimes was supposed to provide to PCF was that of a borrower toward a lender (i.e., repayment of borrowed funds). *See* Complaint at ¶ 7-8, 10 (alleging that Bay Maritimes was obligated to repay PCF for funds advanced under the Credit Agreement solely between Bay Maritimes and PCF).

19. The obligation to repay borrowed funds to a lender does not qualify as an NVOCC service under 46 U.S.C. § 40102(17). PCF's alleged claim is premised entirely upon the provision of non-NVOCC services, and therefore, under *AEL*, 46 U.S.C. § 40902, and 46 U.S.C. § 40102(17), PCF is not a proper claimant under the bond and its Complaint should be dismissed with prejudice.

**WHEREFORE**, Defendant, ASPEN AMERICAN INSURANCE COMPANY, respectfully requests that this Court decline to adopt the Report and Recommendation on the Motion, enter an order granting the Motion, and award any such further relief as the Court deems just and proper.

Dated: August 18, 2023.

Respectfully submitted,

**GURLEY ◆ FANT**

/s/  *Christopher C. Fiore*
David E. Gurley
(Fla. Bar No.: 0402214)
dgurley@gurleyfant.com
Michael A. Fant
(Fla. Bar No.: 0100713)
mfant@gurleyfant.com
Christopher C. Fiore
(Fla. Bar No.: 1015669)
cfiore@gurleyfant.com
601 South Osprey Avenue
Sarasota, FL  34236
Telephone: (941) 365-4501
Facsimile: (941) 365-2916
eservice@gurleyassociates.com
*Attorneys for Defendant*
*Aspen American Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2023, a copy of the foregoing was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

**GURLEY ◆ FANT**

*/s/ Christopher C. Fiore*