UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PAYCARGO FINANCE LP,

    Plaintiff,

vs.

ASPEN AMERICAN INSURANCE
COMPANY,

    Defendant,

and

BAY MARITIMES INC.,

    Nominal Defendant.

_____/

CASE NO.: 1:22-cv-22707-KMW

**PLAINTIFF'S PAYCARGO FINANCE LP'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff PayCargo Finance LP ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 56, hereby files this Motion for Summary Judgment, and states:

**INTRODUCTION**

    The Shipping Act requires NVOCCs[1] to obtain a surety bond to pay, among other things, "any claim against an ocean transportation intermediary arising from its transportation-related activities" and "any judgment for damages against an ocean transportation intermediary arising from its transportation-related activities…" 46 U.S.C. § 40902. Plaintiff's claim against Bay Maritimes, an NVOCC, arises from its failure to reimburse Plaintiff for making ocean freight payments on its behalf through a payment platform specific to the cargo industry that allows for the expedited release of cargo. Yet Aspen has somehow determined that Plaintiff's payment of

---

[1] NVOCCs or "non-vessel-operating common carriers" are a type of intermediary in the ocean transportation industry who do not operate their own vessel but nonetheless facilitate the shipment of freight. (SMF ¶1).

1

Bay Maritimes' freight is not a "transportation-related" activity and has denied any payment of Plaintiff's claim from the NVOCC bond. Aspen is mistaken, and summary judgment is appropriate on this core legal dispute between the parties about the scope of NVOCC bonds.

The Complaint alleges a single count for breach of contract based on a failure by Defendant Aspen American Insurance Company ("Aspen") to pay Plaintiff PayCargo Finance LP ("PCF") in connection with a an NVOCC surety bond Aspen issued for Nominal Defendant Bay Maritimes Inc. pursuant to the Shipping Act. As PCF's Statement of Material Facts ("SMF") makes plain, there is no dispute that such a surety bond was in effect at the relevant time. (SMF ¶¶2-4, 16). There is no dispute that Aspen has not paid PCF out of that surety bond. (SMF ¶28). Instead, the central dispute in this case is whether PCF's claim against Bay Maritimes Inc. arises from Bay Maritimes Inc.'s "transportation-related activities" and thus falls within the scope of the NVOCC bond. Determining the scope of the surety bond is a legal question which makes this case ripe for summary judgment.

## **LEGAL STANDARD**

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Francis v. MSC Cruises, S.A.*, 546 F. Supp. 3d 1258, 1261 (S.D. Fla. 2021), citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial." *Francis*, 546 F. Supp. 3d at 1261, citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The non-movant must present more than a

scintilla of evidence in support of the non-movant's position. A jury must be able reasonably to find for the non-movant." *Francis*, 546 F. Supp. 3d at 1261, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

"'[A]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.''" *Medeiros v. NCL (Bahamas) LTD.*, 19-CV-20957, 2020 WL 1308728, at *3 (S.D. Fla. Mar. 5, 2020), quoting *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013). "If the moving party shows 'that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party' then 'it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.*, quoting *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013).

## ARGUMENT

### I. THE SURETY BOND APPLIES TO PCF'S CLAIM

#### A. Introduction

The Shipping Act requires NVOCCs to obtain a surety bond to pay, among other things, "any claim against an ocean transportation intermediary arising from its transportation-related activities" and "any judgment for damages against an ocean transportation intermediary arising from its transportation-related activities…" 46 U.S.C. § 40902. As an NVOCC, Bay Maritimes obtained such a surety bond from Aspen. (SMF ¶2). Plaintiff's claim to recover money it advanced for the payment of freight is precisely such a claim.

#### B. PCF'S Judgment Against Bay Maritimes

PayCargo is a payment platform which allows payments to be made to a network of

transportation and logistics vendors. (SMF ¶¶5-6). Based on its reputation in the industry and ability to tie electronic payment directly to a cargo shipment, payment through PayCargo allows for the prompt release of cargo. (SMF ¶¶5-6). PCF provides 30-day financing to certain users of the PayCargo system. (SMF ¶7). This can be especially helpful to NVOCCs who often wait 30 days themselves to receive payment in connection with their own customers. (SMF ¶¶7-9). Bay Maritimes obtained this financing in the form of a $500,000.00 line of credit from PCF. (SMF ¶10). However, it failed to make timely repayment in connection with the funds it caused PCF to advance on its behalf in connection with a number of freight shipments. (SMF ¶¶18, 22-29).

These non-payments led to a state court proceeding in the Florida Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, in which Bay Maritimes defaulted and a Default Final Judgment was entered against Bay Maritimes in the amount of $150,548.54 plus interest. (SMF ¶¶22-24). Despite the default, Bay Maritimes' principal represented to the court in those proceedings that it was a "legit amount which I owe to PayCargo…" (SMF ¶26). Bay Maritimes has also defaulted in the instant proceedings. (D.E. 13).

Aspen cannot relitigate what Bay Maritimes has already admitted to, both expressly and by default, as well as what is confirmed by a state court judgment. "[A] a default admits all well-pleaded allegations of a complaint." *Cellular Warehouse, Inc. v. GH Cellular, LLC*, 957 So. 2d 662, 665 (Fla. 3d DCA 2007); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) ("In defaulting, Defendants 'admit the plaintiff's well-pleaded allegations of fact.'" (quoting *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir.1987)); *see also MacSteel Intern. USA Corp. v. M/V MING PROPITIOUS*, 00 CV 279, 2003 WL 21371846, at *4 (E.D.N.Y. Apr. 2, 2003) (Court analyzing judgment bond non-payment "is not at liberty to reexamine or disturb the decision granting the default judgment or the issues adjudicated therein.")

Additionally, Aspen's ability to dispute this claim is confined by regulation to inquiring "into the extent to which the judgment for damages arises from the ocean transportation intermediary's transportation-related activities." *See* 46 CFR § 515.23(b).

### C. The Scope of the NVOCC Surety Bond

The Shipping Act requires NVOCCs to obtain a surety bond to pay, among other things, "any claim against an ocean transportation intermediary arising from its transportation-related activities" and "any judgment for damages against an ocean transportation intermediary arising from its transportation-related activities…" 46 U.S.C. § 40902.

The scope of coverage of these bonds is very broad. "The plain words of the Shipping Act indicate that the only limitation on a surety's liability under an NVOCC bond is that the judgment against an NVOCC arise from an NVOCC's 'transportation-related activities.'" *Trans Ocean Container Corp. v. Intercargo Ins. Co.*, C 95-2187 FMS, 1996 WL 390323, at *4 (N.D. Cal. July 3, 1996). And "[t]he legislative history of the 1990 amendments to the Shipping Act indicates that Congress intended that the phrase [transportation-related activities] be interpreted broadly." *Axess Intern., Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935, 941 (9th Cir. 1999). As the *Axess* court noted, the FMC rejected attempts to limit the scope of these bonds, stating: "Nor do we believe that we can limit the bond to only judgments obtained in the United States. The bond is available to 'pay any judgment for damages' against an NVOCC, and is not limited to only conduct by an NVOCC in this country." *Id.*

The failure to make payments in connection with Bills of Lading falls is the classic example of a "transportation-related activity" that NVOCC bonds were designed to cover. *See MacSteel Intern. USA Corp. v. M/V MING PROPITIOUS*, 00 CV 279, 2003 WL 21371846, at *3 (E.D.N.Y. Apr. 2, 2003), judgment vacated on other grounds, 2003 WL 21665128 (E.D.N.Y. June 11, 2003)

5

("Since Congress clearly 'intended § 1721 to be a broad, prophylactic protection for all entities that dealt with NVOCCs,' … this court must read the phrase "transportation-related activities" expansively to include all claims based on bills of lading for shipments between foreign ports and U.S. ports."); Michael P. O'Connor, *Collecting on NVOCC Bonds*, 69–Oct N.Y. St. B.J. 38, 39 (1997) ("Obviously, claims based on bills of lading that evidence shipments between a foreign port and a U.S. port are considered 'transportation related.'")

Likewise, the Northern District of California held that "[t]he plain words of the Shipping Act indicate that the statute protects any party that obtains a judgment against an NVOCC from its 'transportation-related' activities" and further found "no proof of legislative intent to limit a Surety's liability to particular parties." *Trans Ocean Container Corp.*, 1996 WL 390323, at *5 (N.D. Cal. July 3, 1996). In *Trans Ocean*, the plaintiff rented ocean cargo containers to Jeuro, Inc., an NVOCC, and made a claim on Jeuro's NVOCC bond when Jeuro failed to return those containers. *Id.* at *1. "According to the rules of statutory construction, the statutory command is unambiguous: a bond purchased pursuant to the Shipping Act is available to pay any judgment against an NVOCC as long as it arises from the NVOCC's transportation-related activities." *Id.* The court granted summary judgment in favor of the plaintiff, reasoning:

> According to the default judgment, Jeuro Inc. failed to pay the rental value or replace the ocean cargo containers it leased. The evidence presented by the cross-motions for summary judgment establishes that Jeuro Inc. was an NVOCC, that the leasing of ocean cargo containers was a transportation-related activity, and that the NVOCC bond provided by the defendant was meant to inure to the benefit of third-party vendors such as plaintiff.

*Id.* at *5.

Similarly, the Southern District of New York explained that "everything about the legislative history supports a broad, expansive interpretation of [the Shipping Act]" *P & O Containers Ltd. v. Am. Motorists Ins. Co.*, 96 CIV. 8244 (JFK), 1998 WL 146229, at *3 (S.D.N.Y. Mar. 25, 1998). There, the court was considering whether enforcement of the liquidated damages

6

provision in a contract between an NVOCC and an ocean carrier arose from the NVOCC's "transportation related activities." *Id.* at *2. It ultimately determined that reading this language to prohibit the recovery of liquidated damages would be at odds with the Shipping Act. *Id.* at *3.

The *P & O* court elaborated on the legislative history of the Shipping Act:

> [I]n response to growing dissatisfaction with the business conduct of NVOCCs, Congress enacted § 1721 of the Shipping Act. The offending NVOCC practices included: failure to deliver cargo, failure to honor loss and damage claims, and abandonment of cargo…. Congress also recognized that the problems posed by NVOCCs were exacerbated by the fact that many NVOCCs lack tangible assets, and, as a result, many parties injured by NVOCC actions were unable to recoup their losses…. To remedy the problems presented by NVOCCs, Congress … required NVOCCs to post a bond with the FMC of not less than $50,000.

*Id.* The court explained that "[a]lthough Congress never directly discussed the scope of the term 'transportation-related activities,' the legislative history demonstrates that the bond in question in the instant case would cover the liquidated damages owed to P & O." *Id.* at *3. "Clearly, Congress intended § 1721 to be a broad, prophylactic protection ***for all entities that dealt with NVOCCs***." *Id.* (emphasis added).

Here, Bay Maritimes was engaging in the paradigmatic example of NVOCC transportation-related activities – paying common carriers for the movement of freight. By funding those "transportation-related activities" and providing the accounting reconciliation tools and relationships that allowed for the expedient the release of Bay Maritimes' cargo, PCF's claim "ar[ose]" from those "transportation-related activities." *See* 46 U.S.C. § 40902. The NVOCC bond thus applies to PCF's judgment.

## II. THE REMAINING ELEMENTS ARE UNDISPUTED

The Complaint alleges a breach of contract because of a failure by Aspen to pay on the NVOCC surety bond. "The elements of a breach of contract claim under federal common law are: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a

7

breach of that duty, and (4) damages caused by the breach." *Express Damage Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 1:19-CV-24127-JLK, 2019 WL 6699702, at *1 (S.D. Fla. Dec. 9, 2019) (internal citation omitted). Moreover, "'[a] party can enforce a third-party contract only if it reflects an express or implied intention of the parties to the contract to benefit the third party'" *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013) (internal citation omitted).

There is no genuine dispute that an agreement existed here in the form of the NVOCC surety bond. (SMF ¶2). There is no genuine dispute that this surety bond was intended to benefit third parties who obtain judgments arising from the transportation-related activities of the principal. (SMF ¶4). As explained in the Section I.B., PCF obtained such a judgment against Bay Maritimes. There can be no dispute that Aspen has not made any payment from the surety bond in connection with that judgment. (SMF ¶¶28-29). Thus, for the reasons explained in Section I.B. above, that non-payment amounts to a breach. This non-payment caused PCF damages. (SMF ¶29).

XANDER LAW GROUP, P.A.
One N.E. 2nd Avenue, Suite 200
Miami, Florida 33132
Tel: (305) 767-2001
Fax: (855) 926-3370
wayne@xanderlaw.com
marcus@xanderlaw.com
jose@xanderlaw.com

By:    /s/Jose Teurbe-Tolon
    JOSE TEURBE-TOLON
    Fla. Bar No. 87791
    WAYNE R. ATKINS
    Fla. Bar No. 84000
    MARCUS TAN
    Fla. Bar No. 38616

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 23, 2023, a copy of this *Plaintiff PayCargo Finance LP's Motion for Summary Judgment* was served upon:

**Served by mail:**

Bay Maritimes Inc.
1290 Eglinton Ave E #05
Mississauga, ON L4W 1K8
Canada

**Served via CM/ECF:**

David E. Gurley
Michael A. Fant
Christopher C. Fiore
Gurley & Associates
601 South Osprey Avenue
Sarasota, Florida 34236
eservice@gurleyassociates.com

/s/Jose Teurbe-Tolon
JOSE TEURBE-TOLON